## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td><strong>IN RE: LAC MEGÁNTIC TRAIN</strong></td><td>)</td><td></td></tr>
<tr><td><strong>DERAILMENT LITIGATION</strong></td><td>)</td><td><strong>1:16-cv-01001-JDL</strong></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

## ORDER ON CANADIAN PACIFIC RAILWAY COMPANY'S AMENDED MOTION TO DISMISS

In July of 2013, a freight train operated by the Montreal Maine & Atlantic Railway, Ltd. ("MMA"), including its 72 carloads of crude oil, derailed in the town of Lac-Megántic, Quebec, leading to a series of explosions that destroyed part of the downtown area and killed 47 people.  The next month, MMA filed a chapter 11 Bankruptcy proceeding in this District and simultaneously sought similar protection in Canada.  The derailment also spawned litigation in both Illinois and Texas, with multiple plaintiffs (the "Plaintiffs") asserting claims for negligence and wrongful death against a multitude of defendants, all but one of whom, Canadian Pacific Railway Company ("CP"), have since settled.

The cases which comprised the Illinois and Texas litigation are all now before this court, having been ordered transferred to the District of Maine by me pursuant to the authority established in 28 U.S.C. § 157(b)(5).  Two cases that were originally filed in the Circuit Court of Cook County, Illinois, *Roy v. Western Petroleum Co., et al.,* 1:14-cv-00113, and *Grimard v. Rail World, Inc., et al.,* 1:15-cv-00250, were removed to the U.S. District Court for the Northern District of Illinois before being transferred to the District of Maine in 2014.  Another 35 cases followed the same

trajectory from the Circuit Court of Cook County to the Northern District of Illinois before being transferred to the District of Maine in 2016,[1] along with two cases from the U.S. District Court for the Northern District of Texas.  *See Audet, et al. v. Devlar Energy Marketing, LLC, et al.,* 1:16-cv-00105-JDL; *Boulanger, et al. v. Arrow Midstream Holdings, LLC, et al.,* 1:16-cv-00106-JDL.  All 39 cases were eventually consolidated into the instant case in April 2016.  *See* ECF No. 1.[2]

In December 2015, CP filed an Amended Motion to Dismiss the claims brought by the Plaintiffs in *Roy* and *Grimard*. 1:14-cv-00113, ECF No. 244; 1:15-cv-00250, ECF No. 79.  CP's Amended Motion to Dismiss, along with the *Roy* and *Grimard* plaintiffs' response and CP's reply, were subsequently deemed filed in the

---

[1] *See Pepin v. Canadian Pacific Railway Company,* 1:16-cv-00120-JDL; *LaFontaine v. Canadian Pacific Railway Company,* 1:16-cv-00121-JDL; *Couture v, Canadian Pacific Railway Company,* 1:16-cv-00122; *Sevigny v. Canadian Pacific Railway Company,* 1:16-cv-00123-JDL; *Boulet v. Rail World, Inc.,* 1:16-cv-00124-JDL; *Cameron v. Rail World, Inc.,* 1:16-cv-00125-JDL; *Bolduc v. Canadian Pacific Railway Comany,* 1:16-cv-00126-JDL; *Bedard v. Rail World, Inc.,* 1:16-cv-00127-JDL; *Ratsch v. Rail World, Inc.,* 1:16-cv-00128-JDL; *Dube v. Canadian Pacific Railway Company,* 1:16-cv-00129-JDL; *Belanger v. Canadian Pacific Railway Company,* 1:16-cv-00130-JDL; *Gaboury v. Canadian Pacific Railway Company,* 1:16-cv-00131-JDL; *Begnoche v. Canadian Pacific Railway Company,* 1:16-cv-00132-JDL; *LaPierre v. Canadian Pacific Railway Company,* 1:16-cv-00133-JDL; *Bolduc v. Canadian Pacific Railway Company,* 1:16-cv-00134-JDL; *Faucher v. Rail World, Inc.,* 1:16-cv-00135-JDL; *Paquet v. Canadian Pacific Railway Company,* 1:16-cv-00136-JDL; *Martin v. Rail World, Inc.,* 1:16-cv-00137-JDL; *Turcotte v. Canadian Pacific Railway Company,* 1:16-cv-00138-JDL; *Belanger v. Canadian Pacific Railway Company,* 1:16-cv-00139-JDL; *Roy v. Canadian Pacific Railway Company,* 1:16-cv-00140-JDL; *Boulet v. Canadian Pacific Railway Company,* 1:16-cv-00141-JDL; *Dubois-Couture v. Canadian Pacific Railway Company,* 1:16-cv-00142-JDL; *Rodrigue v. Canadian Pacific Railway Company,* 1:16-cv-00143-JDL; *Begnoche v. Canadian Pacific Railway Company,* 1:16-cv-00144-JDL; *Dumas-Chaput v. Canadian Pacific Railway Company,* 1:16-cv-00145-JDL; *Dubois v. Rail World, Inc.,* 1:16-cv-00146-JDL; *Mercier v. Canadian Pacific Railway Company,* 1:16-cv-00147-JDL; *Picard v. Rail World, Inc.,* 1:16-cv-00148-JDL; *LaPoint v. Rail World, Inc.,* 1:16-cv-00149-JDL; *Champagne v. Canadian Pacific Railway Company,* 1:16-cv-00150-JDL; *Begnoche v. Canadian Pacific Railway Company,* 1:16-cv-00151-JDL; *Boulanger v. Rail World, Inc.,* 1:16-cv-00153; *Proteau v. Canadian Pacific Railway Company,* 1:16-cv-00154-JDL; *Veilleux v. Canadian Pacific Railway Company,* 1:16-cv-00156-JDL.

[2] All citations to the docket reference documents filed in case number 1:16-cv-01001-JDL unless otherwise indicated.

consolidated case and deemed applicable to all the Plaintiffs by agreement of all of the parties.  ECF No. 1 at 2.

Oral argument on the Amended Motion to Dismiss took place on July 13, 2016. In addition to the Plaintiffs and CP, Robert J. Keach, the Estate Representative for the Postconfirmation MMA Estate, made a provisional appearance at the hearing subject to the court's ruling on his Motion to Intervene (ECF No. 10).  I have denied the Motion to Intervene by a separate order.

CP raises four bases for dismissal: (1) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); (2) insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5); (3) the doctrine of *forum non conveniens*; and (4) federal preemption.  For the reasons explained below, the Amended Motion to Dismiss is granted.

## I. LACK OF PERSONAL JURISDICTION

CP contends that no United States court has jurisdiction over it because it owns no tracks in the U.S.; it is not incorporated in the U.S.; and it does not operate in the U.S., with the limited exception of bringing some trains a short distance over the U.S.-Canadian border to hand off the train to the U.S. employees of its U.S. affiliate.  ECF No. 2 at 2.  CP also asserts that these facts, combined with what it asserts is the lack of any U.S.-based causation to the accident in Lac Mégántic, require dismissal of the Amended Complaint for lack of personal jurisdiction.  *Id.*

### A.    Burden of Production

The plaintiff has the burden of establishing personal jurisdiction over a defendant.  *Boit v. Gar-Tec Prods., Inc.,* 967 F.2d 671, 674-75 (1st Cir. 1992) (citation

omitted).  When a defendant files a motion to dismiss for want of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "a district court may choose from among several methods for determining whether the plaintiff has met its burden." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.,* 2016 WL 3147645, at *3, --- F.3d --- (1st Cir. 2016) (quoting *Adelson v. Hananel,* 510 F.3d 43, 48 (1st Cir. 2007) (internal quotation marks omitted); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 50-51 (1st Cir. 2002)).  The "most conventional" of these methods is the *prima facie* method, which "permits the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Foster–Miller Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir. 1995) (quoting *Boit,* 967 F.2d at 675) (internal quotation marks omitted).  "The *prima facie* showing of personal jurisdiction must be based on evidence of specific facts set forth in the record," *Boit,* 967 F.2d at 675, and requires the plaintiff to "go beyond the pleadings and make affirmative proof[,]" *United States v. Swiss American Bank, Ltd.,* 274 F.3d 610, 619 (1st Cir. 2001) (quoting *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 987 F.2d 39, 44 (1st Cir. 1993); *see also Foster-Miller,* 46 F.3d at 145 ("To make a prima facie showing of this calibre, the plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts.").[3]

---

[3] In its recent opinion in *Baskin-Robbins,* 2016 WL 3147645, at *3, for example, the First Circuit analyzed the plaintiff's *prima facie* showing of personal jurisdiction by examining documents outside of the complaint, including letters in the record between the parties, franchise renewal notices sent by the defendant to the plaintiff, and certain contract documents. *Id.* at *4-*6; *see also Boit,* 967 F.2d at 675; *Swiss American Bank,* 274 F.3d at 619; and *Foster-Miller,* 46 F.3d at 145.

**B.     Fifth Amendment Due Process**

There is no dispute that personal jurisdiction in this case is governed by the Due Process Clause of the Fifth Amendment because the court's alleged subject matter jurisdiction derives from a federal statute, 28 U.S.C.A. § 1452(a) (2016), insofar as it is "related to" the MMA bankruptcy.  *Swiss Am. Bank,* 274 F.3d at 618; *see also Auburn Mfg., Inc. v. Steiner Industries,* 493 F. Supp. 2d 123, 127 (D. Me. 2007).  "[U]nder the Fifth Amendment, a plaintiff need only show that the defendant has adequate contacts in the United States as a whole, rather than with a particular state." *Swiss Am. Bank,* 274 F.3d at 618 (citing *United Elec., Radio & Mach. Workers,* 960 F.2d at 1085).

**C.     General and Specific Personal Jurisdiction**

Ever since the Supreme Court's opinion in *International Shoe Co. v. State of Washington,* 326 U.S. 310 (1945), courts have divided the personal jurisidiction analysis into two parts: "general" and "specific" personal jurisdiction.  *Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 462-63 (1st Cir. 1990) (citing *Int'l Shoe,* 326 U.S. 310).  General jurisdiction exists when the defendant has engaged in "continuous and systematic activity" in the forum.  *Harlow v. Children's Hosp.,* 432 F.3d 50, 64 (1st Cir. 2005).  Specific jurisdiction exists when "the cause of action . . . arises directly out of, or is related to, the defendant's forum-based contacts." *Id.* at 60-61.  For both categories of personal jurisdiction, the defendant must have sufficient "minimum contacts" with the forum; those contacts must be purposeful; and the exercise of jurisdiction must be reasonable under the circumstances.  *Id.* at 57.  *See also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

1.     **General Personal Jurisdiction**

A court may exercise general personal jurisdiction over a foreign corporation "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman,* 134 S.Ct. 746, 751 (2014) (quotation omitted).[4]   "[I]f such contacts do not exist in sufficient abundance, the general jurisdiction inquiry ends." *In re New Motor Vehicles Canadian Export,* 307 F. Supp. 2d 145, 150 (D. Me. 2004) (citing *Donatelli,* 893 F.2d at 465).

The Amended Complaint alleges that CP is a "Canadian company, headquartered in Calgary, Alberta, Canada, with corporate offices in Minneapolis, Minnesota, and [which] operates trains throughout Canada and the United States[.]" Case No. 1:14-00113, ECF No. 182 at 5, ¶ 6.[5]   The Amended Complaint also alleges that CP is a "transportation, logistics, and management company which maintains over 14,000 miles of track extending throughout Canada and into the U.S. industrial centers of Chicago, Newark, Philadelphia, Washington, New York City, and Buffalo." *Id.* at 38, ¶ 184.

CP argues in its Motion to Dismiss that none of these pleaded facts render it "at home" in the United States.  ECF No. 2 at 13.  It notes that while the Amended

---

[4] The question presented in *Daimler AG* concerned the exercise of personal jurisdiction under the Due Process Clause of the Fourteenth Amendment, and therefore the contacts and affiliations being analyzed were with an individual state (California).  *See Daimler AG,* 134 S. Ct. 746.  Where, as here, the case concerns the proposed exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment, the contacts and affiliations under analysis are with the United States generally. *In re New Motor Vehicles Canadian Export,* 307 F. Supp. 2d 145, 150 (D. Me. 2004).

[5] The Amended Complaint is also found at case number 1:15-cv-00250-JDL, ECF No. 1 and in case numbers 1:16-cv-00120-JDL through 1:16-cv-00151-JDL, 1:16-cv-00153-JDL, and 1:16-cv-00154-JDL. The docket entry in each of these cases is ECF No. 1-2.

Complaint correctly alleges that it is a Canadian company that is headquartered in Canada, "[a]llegations about CP having corporate offices in Minnesota, and operating trains throughout the United States, including the State of Illinois are simply false." *Id.* (quotation marks omitted).   CP also submitted the Affidavit of James Clements, its Vice President of Planning and Transportation Services, who states under oath that CP is the operating subsidiary of Canadian Pacific Railway Limited, which is also a Canadian corporation, and that "CP conducts almost no business in the United States." ECF No. 2-3 at 1.   Clements states that CP train crews do not operate trains in the United States, "except for limited operations . . . where CP crews dismount and turn the train over to crews employed by a U.S. subsidiary." *Id.* at 2.

In opposing CP's motion to dismiss, the Plaintiffs contend that the allegations contained in the Amended Complaint properly encompass the activities of both CP and its U.S. affiliates.   ECF No. 2-11 at 3-4.   They also accuse CP of engaging in a "shell game of identifying its affiliates as 'doing business as CP.'"   *Id.* at 3.   Yet the Plaintiffs do not dispute the Clements Affidavit, nor offer evidence or legal authority to explain how the fact that CP and its affiliates do business under the same trade name is improper or renders CP "at home" in the United States.   *See* ECF No. 2-11.

The Plaintiffs' have fallen short of what is required to make a prima facie showing of general personal jurisdiction because they have failed to "adduce evidence of specific facts" and instead have simply rested upon the pleadings.   *Foster-Miller,* 46 F.3d at 145; *Swiss American Bank,* 274 F.3d at 619; *Boit,* 967 F.2d at 675.   The undisputed record evidence establishes that CP is a Canadian corporation without continuous and systematic activity in the United States.   The undisputed record

evidence establishes that CP is a Canadian corporation without continuous and systematic activity in the United States. *Cf. Waldman v. Palestine Liberation Org.,* --- F.3d ----, 2016 WL 4537369, at *12 (2d Cir. Aug. 31, 2016) (Record evidence demonstrated that defendants were not "at home" in the United States, where they were directed from and headquartered abroad).  For this reason, I conclude that the Plaintiffs have not met the constitutional threshold for the court to exercise general personal jurisdiction over CP.

### 2.     Specific Personal Jurisdiction

Specific jurisdiction allows a court to hear a particular case as long as "that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum."  *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)).  To determine whether specific jurisdiction exists in a given case, the court first must determine whether the claim at issue in the litigation "directly relates to or arises out of the defendant's contacts with the forum[,]" and if so, "whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws." *Swiss Am. Bank,* 274 F.3d 610, 620-21 (1st Cir. 2001) (quoting *Phillips Exeter*, 196 F.3d at 288).  If these two requirements are met, the court must then determine whether the exercise of specific jurisdiction would be reasonable "in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction."  *Id.* at 621.

As *prima facie* support for CP's contacts with the United States, the Plaintiffs point to the undisputed fact that the train that derailed in Lac Mégántic travelled

from North Dakota and through Illinois and other states before entering Canada. ECF No. 2-11 at 21.  The Plaintiffs also cite the following statement that CP made before the Bankruptcy Court, in which it admitted that its U.S. subsidiaries operated the train: "CP subsidiaries, doing business as Canadian Pacific or Canadian Pacific Railway, conduct U.S. operations, including movement of the train that ultimately derailed from North Dakota to the Canadian border." *Id.* (citing *Keach v. World Fuel Svcs. Corp.* (the "Adversary Proceeding"), Bankr. Case No. 14-01001; CP's Motion to Dismiss the Adversary Proceeding, ECF No. 140-1 at 4).  Neither this statement nor the undisputed fact that the train passed through several U.S. states constitutes evidence that CP, as opposed to its subsidiaries, did or failed to do anything on U.S. soil, and thus, neither supports the Plaintiffs' *prima facie* argument that CP had sufficient U.S. contacts for specific jurisdiction to exist.  In fact, CP's statement tends to weaken the Plaintiffs' argument because it asserts that it was CP's U.S. subsidiaries, and not CP, that operated the train in the United States.  *See* Adversary Proceeding, Bankr. Case No. 14-1001, ECF No. 140 at 4.

Finally, the Plaintiffs cite their allegation that CP "mislabeled the oil in the train or failed to take appropriate action in the United States to prevent the oil from exploding in the subsequent derailment[.]"  ECF No. 2-11 at 21.[6]  For the same reasons discussed above, this allegation in the Amended Complaint, standing alone, does not support specific jurisdiction because, under the *prima facie* method, a plaintiff opposing a motion to dismiss for want of personal jurisdiction must "go

---

[6] Although the plaintiffs did not provide a record citation for this allegation, it appears in the Amended Complaint in case no. 1:14-cv-113; ECF No. 182 at 40.

beyond the pleadings and make affirmative proof." *Swiss American Bank,* 274 F.3d at 619; *Boit,* 967 F.2d at 675; *see also Foster-Miller,* 46 F.3d at 145.  For this reason, I conclude that the Plaintiffs have not met their burden of production for establishing specific personal jurisdiction.

### 3. Existence of Personal Jurisdiction in the Bankruptcy Court

The Plaintiffs also argue that CP is subject to either or both general and specific jurisdiction in this case because the Bankruptcy Court "considered, and rejected" CP's personal jurisdiction arguments and ruled that CP was amenable to the exercise of personal jurisdiction in the Adversary Proceeding.  ECF No. 2-11 at 20 (citing the Adversary Proceeding, Bankr. Case No. 14-01001, ECF No. 152; ECF No. 154).  The Plaintiffs contend that because the Bankruptcy Court is a unit of the District Court pursuant to 28 U.S.C.A. § 151 (2016), the Bankruptcy Court's finding applies in this case "for the same reasons, and to the same extent[.]"  *Id.*[7]

CP concedes that personal jurisdiction was found to exist in the Adversary Proceeding, but maintains that the Bankruptcy Court never "considered and rejected" its personal jurisdiction arguments.  ECF No. 2-15 at 2-3.  CP also argues that the Bankrutpcy Court's analysis did not rely upon CP's alleged contacts with the United States.  ECF No. 2-13 at 14.  Instead, CP contends that the Bankruptcy Court ruled that it effectively consented to personal jurisdiction by participating in the Adversary Proceeding.  ECF No. 2-15 at 3 (citing the Adversary Proceeding, Bankr. Case No. 14-1001, ECF No. 162 at 32-33).  Consent to jurisdiction in one proceeding, CP argues,

---

[7] I note that the Plaintiffs do not cite any legal authority in support of this argument.  *See id.*

does not waive the right to assert lack of personal jurisdiction in another case. *Id.* (citing *Akanani v. Aegis Defense Servs., LLC,* 976 F. Supp. 2d 13, 37 n.10 (D.D.C. 2014)).

The Bankruptcy Court's personal jurisdiction determination in the Adversary Proceeding is not controlling in this case because the Bankruptcy Court concluded that specific jurisdiction existed based on CP having filed a proof of claim. Adversary Proceeding, Bankr. Case No. 14-1001, ECF No. 162 at 32. The Bankruptcy Court's order made no mention of the contacts alleged by the Plaintiffs in this case, i.e., that CP operates a railroad network throughout the United States and mislabeled the oil on board the train or otherwise failed to take appropriate action in the United States to prevent the oil from exploding. *See id.* Furthermore, the Plaintiffs do not argue that CP's consent to jurisdiction in the Adversary Proceeding was a knowing and intelligent agreement to personal jurisdiction in this case, and they have not identified how such a conclusion should be implied by operation of law. *See* ECF No. 2-11.

### 4. Judicial Estoppel

The Plaintiffs also raise the doctrine of judicial estoppel as a basis for finding personal jurisdiction in this case.

CP filed an Objection to the Trustee's July 15, 2015, Plan of Liquidation (the "Confirmation Objection") in the MMA Bankruptcy, Bankr. Case No. 13-10670, ECF No. 1657, in which it argued that the proposed liquidation plan would "forcibly depriv[e] CP of the contractual indemnity and setoff rights" owed to it by Western

Petroleum Company ("WPC"). *Id.* at 18, ¶ 47. As part of this argument, CP claimed that:

> A U.S. rail carrier can only be held to the duties prescribed by U.S. railroad laws and regulations, and U.S. hazardous materials regulations. Beyond those federally dictated obligations CP Tariff 8, Item 20 made WPC responsible for classifying the oil and selecting the packaging. CP is therefore entitled to indemnification from WPC.

*Id.*

The Plaintiffs contend that by claiming entitlement to indemnification from WPC based upon U.S. railroad and hazardous materials laws and regulations, CP effectively conceded that it is a U.S. rail carrier. *See* ECF No. 2-11 at 22. As a consequence of having adopted this position, the Plaintiffs contend, CP was provided with "generous benefits in the form of negotiated 'proportionate judgment reduction' provisions that are incorporated into section 10.10 of the [C]onfirmation [O]rder." *Id.* (citing Bankr. Case No. 13-10670, ECF No. 1801 at 112-116).[8] The Plaintiffs claim that "CP is playing 'fast and loose' with this Court by arguing one position before the Bankruptcy Court in its Confirmation Objection, and arguing the exact opposite position here[,]" and urges that, pursuant to the doctrine of judicial estoppel, CP be barred from arguing a lack of personal jurisdiction based on the fact that CP's U.S. affiliate was the operator of the train. ECF No. 2-11 at 22-23.

---

[8] The document referred to by the Plaintiffs as the "Confirmation Order" is the Bankruptcy Court's Order Confirming Trustee's Revised First Amended Plan of Liquidation dated July 15, 2015 and Authorizing and Directing Certain Actions in Connection Therewith, Bankr. Case No. 13-10670, ECF No. 1801. Elsewhere in their Response to CP's Amended Motion to Dismiss (ECF No. 2-11), the Plaintiffs refer to the same document as the "Confirmation Plan." ECF No. 2-11 at 2 & n.2. For the sake of consistency, I refer to the document throughout this order as the "Confirmation Plan").

In *New Hampshire v. Maine,* the Supreme Court noted that, among the factors which "typically inform the decision whether to apply the doctrine [of judicial estoppel] in a particular case[,]" is whether the party taking an inconsistent position has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled[.]"[9] [10]  532 U.S. 742, 750-51 (2001) (citing *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 599 (6th Cir. 1982). "Absent success in a prior proceeding, the party's later inconsistent position introduces no 'risk of inconsistent court determinations[.]'"  *Id.* at 750-51 (quoting *United States v. C.I.T. Constr., Inc.,* 944 F.2d 253, 259 (5th Cir. 1991)).

The crux of CP's Confirmation Objection was that it was entitled to indemnification from WPC.  Bankr. Case No. 13-10670, ECF No. 1657 at 18, ¶ 47. Section 10.10 of the Confirmation Plan ("Barred Persons and Barred Claims"), however, specifically bars CP from seeking indemnification from any of the released parties:

> [A]ny . . . Persons that hold, have held, or may hold a Claim . . . including, without limitation, Canadian Pacific Railway Company and any parent, affiliate or subsidiary thereof . . . are hereby permanently barred, enjoined, and restrained from commencing . . . in this Court, [or] in any federal or state court . . .any Claim . . . or Cause of Action against any of the Released Parties, including, without limitation, any personal injury,

---

[9] The other two factors are (1) whether a party's later position is "clearly inconsistent" with its earlier position, and (2) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire,* 532 U.S. at 750-51 (citations omitted).

[10] The Court also noted that there are no "inflexible prerequisites" and no exhaustive formula for determining when judicial estoppel applies.  *Id.* at 750.

property damage, wrongful death, ***indemnity***, contribution, reimbursement or subrogation claim . . . .

Bankr. Case No. 13-10670; ECF No. 1801 at 113 (emphasis added).

Accordingly, the Confirmation Plan forecloses an indemnity claim by CP against a released party such as WPC. *Id.* Assuming that CP's position before the Bankruptcy Court is actually inconsistent with its personal jurisdiction argument in this case, the former position was unsuccessful and, therefore, there is no "risk of inconsistent court determinations." *New Hampshire,* 532 U.S. at 750-51. Thus, judicial estoppel does not apply.

### 5. Conclusion Regarding Personal Jurisdiction

For the reasons discussed above, I conclude that the Plaintiffs have not met their burden of establishing personal jurisdiction over CP. With respect to general personal jurisdiction, the Plaintiffs failed to produce *prima facie* evidence showing that CP has engaged in continuous and systematic activity in the United States. With respect to specific personal jurisdiction, the Plaintiffs failed to produce *prima facie* evidence showing that CP had "a significant subset of contacts" with the United States which would constitute a purposeful availment of the benefits and protections afforded by American law. *See Phillips Exeter Acad.,* 196 F.3d at 288; *Swiss Am. Bank,* 274 F.3d 610. With respect to the Bankruptcy Court's ruling that CP was amenable to personal jurisdiction in the Adversary Proceeding, that ruling is not controlling in this case because it contains no discussion of CP's contacts with the United States and, instead, is based upon CP having filed a proof of claim. There is no suggestion that CP's proof of claim was a knowing and intelligent agreement to personal jurisdiction in this case. Finally, with respect to judicial estoppel, CP's

14

claimed entitlement to indemnification from WPC in the MMA Bankruptcy case was ultimately unsuccessful, and thus there is no risk of inconsistent court decisions.

## II. INSUFFICIENT SERVICE OF PROCESS

CP also moves for dismissal due to insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5), and argues that although the Plaintiffs delivered a summons and copy of the Amended Complaint to CT Corporation in Chicago, Illinois, CP does not transact business in Illinois and never authorized CT Corporation or any other agent in Illinois to accept service on its behalf. ECF No. 2 at 17-18 (citing ECF No. 2-2 at 1, ¶¶ 3, 4). CP makes the same argument with regard to the Plaintiffs' subsequent delivery of a summons and copy of the Amended Complaint to CT Corporation in New York. *Id.* at 18. CP claims that CT Corporation in New York is only authorized to accept service for actions involving securities or debt offerings, neither of which are at issue in this case. *Id.* (citing ECF No. 2-2 at 1-2, ¶ 4). Therefore, CP contends, no authorized agent received process and service was not effected. *Id.*

Prior to the transfer and consolidation of claims against CP, thirty-eight amended complaints were filed in Illinois, Texas, and the District of Maine between June 23, 2015, and August 21, 2015.[11] CP filed motions to dismiss each of these amended complaints between August 21, 2015, and December 17, 2015,[12] arguing

---

[11] Although there were thirty-nine cases in total, no amended complaint was filed in *Boulanger,* 1:16-cv-00106-JDL.

[12] In Texas, CP filed a motion to dismiss the original complaint in *Boulanger,* 1:16-cv-00106-JDL, ECF No. 9, on Setpember 24, 2015. CP also filed a motion to dismiss the amended complaint in *Audet* on August 21, 2015, 1:16-cv-00105-JDL, ECF No. 9

among other things that service of process was insufficient.  Therefore, the Plaintiffs had reason to believe as early as August 21, 2015, but no later than December 17, 2015, that the service of the Amended Complaint was deficient.  However, it was not until the July 13, 2016, hearing that the Plaintiffs suggested that they should be permitted more time to complete service of process, after first conceding that service was insufficient.  ECF No. 25 at 39:10-17.

As of the date of this Order, the Plaintiffs still have not filed proof of service upon CP in Canada or notified the court that service has been effected.  Instead, the Plaintiffs argue that dismissal based upon insufficient service of process is inappropriate because the time limit for service of process has not yet run.  *Id.* at 38-39.  The Plaintiffs cite Federal Rule of Civil Procedure 4(m), which sets a 90-day time limit within which to effectuate service of process, but which they argue does not apply in this case because Rule 4(m) does not apply to service in a foreign country, which would be necessary to serve a Canadian company such as CP.[13]  *Id.* at 38:12-20.

---

In Illinois, CP filed thirty-five motions to dismiss the amended complaints before the Cook County, Illinois, Circuit Court on October 7 and 8, 2015.  *See Pepin,* 1:16-cv-00120-JDL; *LaFontaine,* 1:16-cv-00121-JDL; *Sevigny,* 1:16-cv-00123-JDL; *Boulet,* 1:16-cv-00124-JDL; *Bolduc,* 1:16-cv-00126-JDL; *Turcotte,* 1:16-cv-00138-JDL; *Boulet,* 1:16-cv-00141-JDL; *Rodrigue,* 1:16-cv-00143-JDL; *LaPoint,* 1:16-cv-00149-JDL; *Ratsch,* 1:16-cv-00128-JDL; *Dube,* 1:16-cv-00129-JDL; *Belanger,* 1:16-cv-00130-JDL; *Gaboury,* 1:16-cv-00131-JDL; *Belanger,* 1:16-cv-00139-JDL; *Picard,* 1:16-cv-00148-JDL; *Couture,* 1:16-cv-00122-JDL; *Cameron,* 1:16-cv-00125-JDL; *Bedard,* 1:16-cv-00127-JDL; *Begnoche,* 1:16-cv-00132-JDL; *Bolduc,* 1:16-cv-00132-JDL; *Faucher,* 1:16-cv-00135-JDL; *Paquet,* 1:16-cv-00136-JDL; *Martin,* 1:16-cv-00137-JDL; *Roy,* 1:16-cv-00140-JDL; *Dubois-Couture,* 1:16-cv-00142-JDL; *Begnoche,* 1:16-cv-00144-JDL; *Dumas-Chaput,* 1:16-cv-00146-JDL; *Poulan Dubois,* 1:16-cv-00146-JDL; *Champagne,* 1:16-cv-00150-JDL; *Begnoche,* 1:16-cv-00151-JDL; *Boulanger,* 1:16-cv-00153; *Proteau,* 1:16-cv-00154-JDL; *Veilleux,* 1:16-cv-00156-JDL.

[13] Prior to December 1, 2015, a plaintiff had 120 days within which to effectuate service pursuant to Federal Rule of Civil Procedure 4(m).  Fed. R. Civ. P. 4(m) (2015 Revised ed.).  The amended rule now requires service within 90 days, and states as follows:

Although the Plaintiffs' interpretation of Rule 4(m) is correct, they did not present it in their response to CP's Amended Motion to Dismiss, *see* ECF No. 2-11, and instead, as noted above, raised it for the first time at the July 13 hearing. Pursuant to Local Rule 7(b), the Plaintiffs were obliged and failed to assert their Rule 4(m) argument within 21 days after the Amended Motion to Dismiss was filed.  LR 7(b).  But even if the Plaintiffs had timely raised this issue, they have failed to present any evidence that they have taken steps in the approximately nine months since CP first filed its Amended Motion to Dismiss[14] to effectuate service under Rule 4(f), which governs service of an individual in a foreign country,[15] or under Rule 4(h)(2), which

---

**(m) Time Limit for Service.** If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1).

[14] CP's Amended Motion to Dismiss was filed on December 17, 2015, in Case No. 1:14-cv-00114 (ECF No. 244) and Case No. 1:15-cv-00250 (ECF No. 79).

[15] Federal Rule of Civil Procedure 4(f) states as follows:

**(f) Serving an Individual in a Foreign Country.** Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served at a place not within any judicial district of the United States:
**(1)** by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
**(2)** if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
**(A)** as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
**(B)** as the foreign authority directs in response to a letter rogatory or letter of request; or
**(C)** unless prohibited by the foreign country's law, by:
**(i)** delivering a copy of the summons and of the complaint to the individual personally; or
**(ii)** using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

governs service upon a corporation "at a place not within any judicial district of the United States[.]"  Fed. R. Civ. P. 4(h)(2).[16]  The Plaintiffs have not provided any justification for their failure to effectuate service upon CP in Canada pursuant to either Rule 4(f) or Rule 4(h)(2).  *See Freedom Watch, Inc. v. Org. of the Petroleum Exp. Countries,* 766 F.3d 74, 78 (D.C. Cir. 2014) ("If a defendant challenges the validity of service of process, the plaintiff bears the burden to demonstrate that the procedure employed to deliver the papers satisfies the requirements of the relevant portions of Rule 4.") (citation and quotation marks omitted).  I therefore conclude that dismissal of the Amended Complaint without prejudice is appropriate due to insufficient service of process.

### III.   *FORUM NON CONVENIENS*

The doctrine of *forum non conveniens* permits discretionary dismissals on a case-by-case basis, "where an alternative forum is available in another nation which is fair to the parties and substantially more convenient for them or the courts." *Mercier v. Sheraton Intern., Inc.,* 981 F.2d 1345, 1349 (1st Cir. 1992) ("*Mercier II*") (citing *Howe v. Goldcorp Invest., Ltd.,* 946 F.2d 944, 947 (1st Cir. 1991); *Royal Bed & Spring Co. v. Famossul Industria E Comercio de Moveis Ltda.,* 906 F.2d 45, 47 (1st Cir. 1990)).  There is a strong presumption in favor of the plaintiff's forum choice, and

---

**(3)** by other means not prohibited by international agreement, as the court orders.

[16]  Federal Rule of Civil Procedure 4(h)(2) states as follows:

> **(h) Serving a Corporation, Partnership, or Association.** Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served . . . **(2)** at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

the defendant bears the burden of proving both (1) the availability of an adequate alternative forum and (2) the likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum. *Mercier II,* 981 F.2d at 1349 (citing *Tramp Oil & Marine, Ltd. v. M/V Mermaid I,* 743 F.2d 48, 50 (1st Cir. 1984); *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947)) (other citations omitted).

There is no dispute in this case that Canada is an adequate alternative forum. *See* ECF No. 2-11 at 8.  The *forum non conveniens* analysis therefore turns on whether the balance of convenience and judicial efficiency, on the one hand, and fairness to the parties, on the other, favors litigating the claims in Canada.  *See Mercier II,* 981 F.2d at 1349.  The Supreme Court has identified a number of public and private interest factors that guide this analysis.  *See Iragorri v. Int'l Elevator, Inc.,* 203 F.3d 8, 12 (1st Cir. 2000).

## A.    The Private Factors

The private factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; ... all other practical problems that make trial of a case easy, expeditious and inexpensive . . . [and] questions as to the [enforceability] of a judgment if one is obtained."  *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).

These factors weigh in favor of concluding that Canada is the more appropriate forum to hear the Plaintiffs' claims.  There is no dispute that the train that derailed was left unattended on MMA's main rail line in Quebec Province, where a fire on board a locomotive resulted in the train's air brakes being released, causing it to roll

downhill headed toward Lac Mégantic, where it derailed and exploded. Amended Complaint, ECF No. 28 at ¶¶120-125. Although the Plaintiffs maintain that the focus of their claims is on decisions allegedly made in the United States concerning labeling and classification of the oil, because the the actual derailment, explosion, and all resulting injuries took place in Canada, there is no doubt that substantial evidence necessary to establish the proximate cause of the disaster resides in Canada. Moreover, evidence related to damages is centered in Canada. Furthermore, the accident was investigated by Canadian authorities. Witnesses to the disaster and its aftermath are located in Canada and would be required to travel across an international border to testify if the case were tried in Maine, Illinois, or Texas. While crossing the U.S.-Canadian border from Quebec to Maine, Illinois, or even Texas is arguably not as burdensome as crossing other international borders, it could complicate obtaining the attendance of unwilling witnesses.

Language is another important factor that weighs in favor of trying the case in Canada. Many of the witnesses and Plaintiffs speak French as their first language.[17] It is likely that need for interpretive services will be greater if the case is tried in the United States. Trying the case in Canada and in close proximity to Lac Megántic would also permit factfinders to view the accident site.

The Plaintiffs do not dispute that they are domiciled in Canada, nor that French is the predominant language spoken by them, *see* ECF No. 2-11 at 8-10, nor

---

[17] As CP notes, "[a]pproximately 77% of Lac Mégantic residents speak only French, and less than a quarter speak any English." ECF No. 2-15 at 8 (citing Quebec Institut De la Statistique, Population By Knowledge of Official Languages (2006), http://www.stat.gouv.qc.ca/statistiques/recensement/2006/recens2006_05/langue/connlangoff05.htm)) .

that "some witnesses and documents undoubtedly are located in Canada[,]" *id.* at 10. But they assert that these facts are a "red herring" because the focus of their case will be on CP's alleged actions and inactions in the United States, and contend that more witnesses will hail from Illinois, Minnesota, and North Dakota than Quebec. *Id.* at 8, 10. The Plaintiffs also argue that this court must give deference to their decision to file suit in the United States rather than Canada. *Id.* at 9 (citing *Piper Aircraft Co. v. Ryan,* 454 U.S. 235, 255 (1981)).

The Plaintiffs' argument is not persuasive given their failure to dispute the Clements Affidavit, which establishes that CP is a Canadian company which "conducts almost no business in the United States," and whose crews do not operate trains in the United States. ECF No. 2-3. The stated focus of the Plaintiffs' cases and their rationale for opposing *forum non conveniens* dismissal thus hinges on the alleged acts and inaction of parties other than CP. This is not a "red herring," nor is it a viable basis for keeping the case in a U.S. court. Additionally, the deference that is normally owed to a plaintiff's choice of venue is weaker where, as here, the Plaintiffs are foreigners. *Piper Aircraft,* 454 U.S. at 255-56 ("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.").

Thus, the private factors weigh in favor of *forum non conveniens* dismissal.

## B.   The Public Factors

The public factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law

that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft,* 454 U.S. at 241 n.6 (citation and quotation marks omitted).

The Plaintiffs argue that the public factors do not weigh in favor of a Canadian forum because CP has failed to provide data showing that the courts of Quebec are not congested and because the United States has as great an interest in the proceedings as Canada, given that "CP's wrongful conduct resulted in dangerous rail cars filled with crude oil being loaded in North Dakota and transported through America's heartland." ECF No. 2-11 at 12-13. The Plaintiffs also argue that it is fair and reasonable for U.S. citizens to serve as jurors because the case involves "acts that put American citizens at risk of danger." *Id.* at 14.

I am not persuaded by the Plaintiffs' assertions for the same reasons noted above with respect to the private factors. Given that the derailment and explosion occurred in Canada, the pertinent public factors weigh in favor of trying the case in Quebec because that is the forum where the public has the greatest interest in the proceedings. Conversely, trying a case of this magnitude, a great deal of which would be conducted in a foreign language and which would address a major calamity that occurred in a foreign country, would impose a significant burden on U.S. citizens serving as jurors in the United States.

Consequently, I conclude that the balance of convenience and judicial efficiency, as well as fairness to the parties, favors having the claims litigated in Canada. *See Mercier II,* 981 F.2d at 1349.

C.    *Res Judicata*

The Plaintiffs also argue that dismissal based upon *forum non conveniens* is improper because it is prohibited by § 10.7 of the Confirmation Plan, which the Plaintiffs contend is a final order entitled to preclusive effect and which may not be collaterally-challenged.  ECF No. 2-11 at 5-6.

Section 10.7 of the Confirmation Plan states the following:

> Unless otherwise provided in this Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, entered in the Transferred WD Cases, or otherwise arising under applicable law in any court order and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order, provided, however, that to the extent against any remaining defendant that is not a Released Party as of the Effective Date, the Trustee will cooperate with the plaintiffs in the Transferred WD Cases in seeking a transfer of such cases to the forum selected by such plaintiffs, and will cooperate in seeking from the District Court, in the order transferring such cases, a finding that the Settlement Agreements and transactions with Released Parties approved and implemented pursuant to this Plan were entered into in good faith pursuant to and in accordance with 740 ILCS 100/2(c).

Bankr. Case No. 13-10670, ECF No. 1801 at 111.

This provision thus obligates the Bankrutpcy Trustee, now the MMA Estate Representative, to cooperate with the Plaintiffs in their attempt to seek an order transferring the cases to the Plaintiffs' preferred venue.  It does not obligate the District Court to grant such a transfer, nor does it prohibit dismissal based upon the doctrine of *forum non conveniens*.

I therefore conclude that dismissal without prejudice is appropriate based upon the doctrine of *forum non conveniens* for the reasons explained above.

## IV. PREEMPTION

I need not, and therefore do not, address federal preemption as a potential basis for dismissal given my conclusions that dismissal is required based on lack of personal jurisdiction, insufficient service of process, and *forum non conveniens*.

## V. CONCLUSION

For the reasons explained above, CP's Amended Motion to Dismiss (ECF No. 2) pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6) is **GRANTED.** The Amended Complaint (ECF No. 28) is hereby **DISMISSED** without prejudice.

**SO ORDERED.**

**This 28th day of September 2016.**

**_/s/ Jon D. Levy_**
**U.S. DISTRICT JUDGE**